Our third case this morning is Acosta v. Foreclosure Connection, 17-4111. Mr. Ross, you may proceed. Good morning, Your Honors and Chief Judge. David Ross. I represent Foreclosure Connection, Inc. and Jason Williams in this matter. I'm going to refer to Foreclosure Connection, Inc. as foreclosure. I'm also going to refer to the Appalachian Plaintiff, R. Alexander Acosta, Secretary of Labor for the U.S. Department of Labor as the Secretary. Our argument, I believe, is quite simple when it relates to the issue of whether or not there was any retaliation in this particular case. There were two men working for foreclosure, a Michael Scott Barber and a Michael Barber. Michael Barber is the father of Michael Scott Barber, so I'm going to refer to Michael Barber as Barber Sr. and the son as Barber Jr. They were fired from working for foreclosure on July 8th of 2015, and the court concluded that they were fired for retaliatory purposes under 29 U.S.C. 215, were of the opinion, of course, that they weren't fired for that purpose. Again, our argument is simple, that for purposes of there to be retaliation, it would be necessary for the decision-maker, and the court has presented ample findings that Jason Williams was the decision-maker. He made decisions on a daily basis, who did what work, when and where, and he's the one who ordered his foreman, Jack Erickson, to terminate the Barbers. Termination occurred on July 8th, 2015, and that's in the court's findings that that occurred on that date. That's also consistent with the Barbers themselves. Barber Sr. had, and on that day, it stipulated fact that Jack Erickson told the Barbers not to show up to work that morning, and they typically would show up about 7 a.m. That seems a little ambiguous, that conversation, to me. You wouldn't necessarily construe that as a separation of employment. It wasn't their evidence in the record that they would come to work as needed, and that if there wasn't work on a particular day, they'd need not to come to work. It seems to me like the conversation on the morning of July 11th doesn't necessarily suggest that they were terminated on the morning of July 11th. I don't know about the way you addressed it, but the facts of the case and the findings of the court were that Jason Williams, the owner of Foreclosure, he would on a daily basis decide what workers worked what sites. As far as I know, and there is nothing in the record about their working this day or that day, they worked every day, the workers did, and on the various projects that Foreclosure had. It was just a matter of whether Jason made those assignments. On July 8th, the barbers were told not to show up to work, and afterwards- Is that your, just if I could interrupt, that's when they were fired in this year's position? And the court's finding. And it's our position, and I believe- Could you just point what paragraph in that? That is under paragraph 38, where the court is talking about the barbers working on July 7th at the Lamborn worksite, and the court refers to this as being the day before they were fired. And the court is making the determination they were fired so he has this, the adverse action in order that's necessary in a retaliation case. Paragraph 35? Is that paragraph 35? 38, I believe. Pardon me? 38, I believe. It's one- He says it a couple times, doesn't he? Yeah, he does a couple times, but the one time that I'm referring to is where the court is actually, it's innocuous as to whether or not this is the finding that the court made that determination, but the court is making that statement that they went to work on July 7th at the Lamborn site, and that was the last day before they were fired. Clarify the record for me. So there was that conversation in the morning of the 8th, then the investigator from the state interviewed one of the, interviewed Mr. Williams or Mr. Erickson, and then isn't there also evidence that then in the afternoon of July 8th, Erickson was instructed to tell the barbers that they were terminated? That I don't know is in evidence. It was the, and let me go to- What's your position on the sequence of events? Well, the sequence of events is- If I'm right in this opinion, what's the winning timeline for you? Okay, the winning timeline is- Where is that in the record? In addition to the court making the finding that they were fired on July 8th, Michael Barber Sr. or Barber Sr. also was of that same opinion. They were told not to show up for work, and you had indicated, well, they would work some days and not. They worked every day, and after July 8th, they were not invited back. In fact, and the investigator is actually one from the secretary's investigator at Sheffield. Keith appeared at the offices on July 8th, but after, and it's stipulated after the call in the morning to not show up for work. He goes ahead, this is Michael Barber Sr., and tells the investigator on July 23rd that, quote, not fired, just not invited back to work, end of quote. In other words, and I agree with you, your thought process, was he really terminated on that exact day because there was some sequence of events, and those sequence of non-events, I'm going to say- They're independent contractors, aren't they? Barbers? No. The court made a determination that they were employees, even though he was a general contractor, but he made a determination that they were employees, and they did work, there were just a few days that Michael Barber did not work, but that occurred even before his son went to work for foreclosure, but they worked every day, except for holidays and weekends, foreclosures. None of the employees worked on those days, but they worked every day. And so on that day, they're told they're not invited back afterwards, so I kind of look at it as the effective date of termination would have been July 8th, when they're told not to show up to work, and they're not invited back, and they're not assigned work, and that's the thought process of Michael Barber Sr., that's the thought process of my client, and the court made that finding that that was the firing date. So I think that, you know, I don't know of any other date where they were fired. There was the next sequence after the appearance of Sheffield Keith, the secretary's lead investigator in this matter. He appeared and announced that he was conducting an investigation, explained what he was going to be doing, asked for some documentation, and then that week had interviewed workers on site to ask them, you know, interview them, find out things, and so, and Jason Williams was aware of this. In fact, to give it more clarity, a week later, and this is a finding of the court, and in our arguments, except for one thing, and I'll get into that in a minute, our findings are our arguments are based upon the findings of the court. We didn't, we haven't included any of our, you know, our own arguments and findings, but in this particular case, that these are the findings of the court. A week later, the court found that Jason Williams told Jack Erickson to never hire the Barbers again, which gives us a thought process, and from the English language, that that means they weren't working there anymore, so to never hire them again can't mean that they were still working there, and he's just instructing him to, and then he goes in to make the statement because, and this is a finding by the court, because it is likely that they turned me into the wage and hour division, and that doesn't sound like somebody who knew about any of the overtime claims and knew about the filings on July 7th by the Barbers at the U.S. Department of Labor. What's the, what's the central error by the district court, then? I'm sorry? What is the central error by the district court? Well, well, there's two things. We indicate that there was a, it was ignored, the, the protection, the non-protection, the non-retaliatory reason that was expressed by Jack Erickson in the telephone conversation that's between he and the Barbers. The Barbers contacted him, and they recorded the conversation, unbeknownst to Jack Erickson. Jack Erickson and Mr. Barber, even though this is after the termination, had been friends for over 20 years. That's in the evidence, and they had been roommates at one time. And this is a very candid conversation. In that conversation, the court is using that conversation to demonstrate that there was an adverse action. Maybe the judge was concerned about the fact that they're told not to show up to work. Doesn't sound like you're fired. And, but the court, in order to show that they were fired, goes to look at this candid conversation between the Barbers and Jack Erickson, where Jack Erickson is stating that they were fired. So now we have the adverse action. The court has the adverse action. However, in that same conversation, Jack Erickson, an agent of foreclosure and the foreman, is also stating the reason they were fired. He's stating it was because there was some tags that were issued. In fact, he's talking about his, he's telling the Barbers, this is what I told Sheffield Keith, and Sheffield Keith wanted to know what happened. And I told Sheffield Keith, this is Jack Erickson, that there were some tags issued by, and they refer to, he refers to one city, but there were two cities, that stopped workage on the properties because they didn't have the proper permits. Jason Warren, Jason Williams found out about it, and at that given point in time was pissed, as Jack Erickson states, and told me to let Mike go, and I let, and that was it for Mike, and Mike was fired. Basically was fired. May I synthesize, attempt to synthesize what you just said about the errors? I have the two sides. Is number one, does the FLSA anti-retaliatory provisions apply to your clients? Yes. And number two, did the district court make an error in finding that your Barbers were discharged because of their complaints to the Department of Labor? That was the second issue, and do you assert that yes, that was the error? No, it wasn't an error. My clients were subject to, the court made a finding, and we did not challenge that finding, that it wasn't even necessary for there to be authority under the FLSA for, to make a finding of retaliation under 29 U.S.C. 215. We did not challenge that, so I can't here today say that was an error on the part of the court, so in fact, so I have to... What is your, what is the error there? Well, the error is... What are you asking us to correct, and why? In just, in two or three sentences, so give us a road map. Okay, in this particular case, our theme is that in order to retaliate against someone, the decision maker has to have knowledge of the protected activity, and in this case, there is just no evidence, and there is actually evidence that he didn't have, but there's no evidence that the decision maker, again, a finding by the court that he's the decision maker, had any knowledge of the protected activity. And who was the decision maker, Erickson or Williams? No, it was Williams. The court made the finding that he was the one, the decision maker. He's the one who told Jack Erickson each and every day who to go, what sites he wanted to work on, who he wanted working there, and so forth, and he went into three different paragraphs of making that finding that he is the decision maker, and he's the one that, in the candid conversation that was recorded, it's Jack Erickson talking about Jason's telling me to fire him. So, you know, he's the one who was the decision maker on the termination, and the point I want to make is that, and I know I'm running out of time, but there was one really critical point, because there was no finding by the court as to whether or not Jason Williams knew about claims of overtime from the, that would also be a protected activity. I mean, I think it's clear, and real quick on the, that he didn't know about their filing of the complaints. The logistics are that they filed the complaints in Salt Lake City, which is where the U.S. Department of Labor is, and their offices are in Taylorsville, Utah, which would be like a complaint filed here against somebody in Aurora, Colorado, and would they know about it happening that afternoon before 7 a.m. the next day? Not likely. And we also have the testimony where he is saying that after Sheffield Keith has appeared and there's all these investigations going on, that it is, that he wants, tells Jack, never hire these folks again, because it's likely they'd turn me in. If he knew they had filed their complaints, he wouldn't say likely. Okay. Got it. Your time's expired. Thank you, Counsel. Thank you, Your Honors. Let's hear from the Department of Labor. Thank you. Good morning, Your Honors. May it please the Court, my name is Sarah Marcus. I represent the Secretary of Labor. With me at Council table is Courtney Witten, who represented the Secretary at the trial in this matter. Your Honors, foreclosure is asking you to reach a Could you pull the microphone away from you? I'm sorry. Thanks. Thank you. Thank you. Foreclosure is asking you to adopt a conclusion that requires you to believe that the district court didn't understand the implications of its own factual findings, and that it's different from any version of events that foreclosure suggested were the truth Could you pull the microphone away from you, please? I'm sorry. Just push it. Just push it. There you go. Thanks. Okay. Let's try again. I apologize. So again, so foreclosure is asking you to adopt a conclusion that requires you to believe the district court didn't understand the implications of its own factual findings, and that it's different from any version of events that foreclosure was advancing at any point before this appeal. Well, if they were fired in the morning of July 8th, then there would be no causal connection to the complaint to the department. So, Your Honor And isn't that their theory, if you boil it all down? That's their theory now. Okay. What's the rebuttal to that? That the district court couldn't have understood that to be the case, because the district court concluded that they were fired because they had complained to the Wage and Hour Division, which is based on plenty of evidence in the record. Erickson made a statement to that effect to the investigator on August 4th, which appears in the appendix. He testified at trial that that's why the Barbers were fired. The Barbers testified at trial that that's what Erickson made them believe. And another employee, Zeke Magana, also testified that that's what Erickson said. There's also the recorded conversation between Erickson and the Barbers that the Secretary of Justice Does the findings of fact and conclusion of law demonstrate that sequence? It's not as finely parsed as it could be, Your Honor, and that's because foreclosure wasn't making this argument below. In their interrogatories, in Williams' deposition, and in the testimony at trial, at no point did they say that the Barbers were fired on the morning of July 8th. Don't we at the least have to remand for clarification? There's twice. Here the court says in its decision, The balance of the evidence indicates that the Barbers worked these hours, as both Magana and Erickson testified, consistent with the Barbers' own testimony, that they knew the Barbers were working on July 7, 2015, the last day before the Barbers were fired. And there's a similar, well I had it underlined here, where the court says that. And I just don't think we can ignore that and say, obviously the district court was confused. You make a decent argument that we should send it back down for the district court to clarify what it's deciding. But when the court explicitly says something like that, we can't ignore that, I don't think. Your Honor, it's certainly this court's prerogative to remand. I think that although, again, the court could, it's not really necessary and would expend additional resources where it's clear from the opinion as a whole and from the conclusions that the district court drew that that language is perhaps less precise than one would like, but isn't consistent with the reading where the court didn't understand whether the Barbers were fired in retaliation for complaining to the Wage and Hour Division. The last day they worked was July 7. They didn't go back after July 8. They weren't invited back that morning, the evidence indicates, because there was a work stoppage because of an issue with city permits, and they were expected by everyone to come back once the work resumed. But in the intervening time, Jason Williams drew the conclusion that the Barbers had complained to the Wage and Hour Division and decided he never wanted them to work for him again, and that that was the retaliatory action. You don't have an alternative argument that even if they were fired on July 8, you win. You're not arguing that. You're, you're, I'm not sure what your argument would be, but I just want to make sure that you're not arguing you have an alternative ground. Your Honor, as Judge Tinkovich indicated, there is some evidence in the record that Jason Williams made the decision by later in the day on July 8, and it's also the case that the decision not to hire them back because they had complained to the Wage and Hour Division in adverse actions regardless of what had happened before. But I think that the District Court's finding was that they were fired within a week of the complaint because they complained to the Wage and Hour Division. May I ask, Judge Tinkovich earlier was asking some counsel about, okay, we're writing the opinion, maybe it was Judge Lucero. If we're writing the opinion here, where do we state your authority of the DOL to bring in action for damages for retaliation? I don't see, it's kind of offhanded and implied in one provision, but if you look at the statutory provisions given the DOL authority, I don't see any that specifically says you can sue for damages. So how do we write an opinion saying the DOL is proceeding under this statute? Your Honor, Section 217 gives the Secretary authority to request injunctive relief from a District Court, and that authority, of course, is quite broad. It's under 217? 217. That's for injunctive relief? Yes. Okay, but this is a claim for damages. This is not an equitable action. This is a legal claim for damages, and I don't see that under 217. Well, the Secretary also has authority under 216. I believe it's in B, or it might be in C. I apologize, Your Honor. Well, B says that the right of action by a private person terminates upon the Secretary of Labor doing something, which is a strange way to confer authority on the Department of Labor. And that's why I was curious about where, and I couldn't find any specific authority out there, any case law saying that DOL has authority to bring a claim for damages for retaliation. I couldn't see where that had been specifically addressed by a court. Your Honor, I don't have authority to cite for you, and I will agree that the remedies provisions of the Fair Labor Standards Act are not a perfect model of clarity, but it's, I think, well understood by courts that the Secretary has brought authority to bring enforcement actions under the Act, and that any remedies that it... Well, they definitely have authority to bring enforcement actions. And they can bring it for not paying overtime. That's clear. They have authority there, and they have authority for injunctive relief when there's retaliation, presumably. I just don't see any provision that gives authority to bring a claim for damages for retaliation, and I didn't find any clear understanding by the courts that that authority exists, that the issue is ignored, as it was in all the briefing in this case. But sometimes we have to write an opinion, and you start out saying, DOL is proceeding under this authority, and I don't see what we can say. Well, Your Honor, I think that the court's equitable authority to issue wide varieties of kinds of relief under its equitable powers is... Includes a claim for damages for retaliation? Well, it's a remedy for a violation of the statute. I apologize, because this issue wasn't... I don't think it will be considered an equitable... Briefed, I am not fully prepared to answer your question. I'm curious about that, and I won't take any longer because it wasn't argued, but it's a fundamental issue. Your Honors, we're also asking the court to resolve the legal issues raised by this case. First, to conclude that the inter-retaliation provision of the FLSA by prohibiting any person from discriminating against an employee applies to a broader set of actors than just covered employers, but also to hold that foreclosure is a covered employer for purposes of the minimum wage and overtime provisions of the Act. There is an ongoing overtime investigation of foreclosure, and foreclosure has repeatedly argued at summary judgment and a motion for reconsideration and then again at trial that it's not a covered employer, which prompted the court to ask the Secretary to present evidence on this issue, and foreclosure should be precluded from continuing to argue this matter and from requiring the Secretary and potentially another district court from expending more resources resolving the question. They're quite clearly a covered employer. It's been amply proved, and the district court's findings were well supported by the record. Your Honors have no further questions. Thank you, Counsel. Thank you. Session time.  Thank you. Supplemental authority. Hold on. Go ahead and frame your question. You said you could provide supplemental authority. I'd be interested in some supplemental briefing on DOL's authority to bring a claim for the relief they're seeking here. Is that clear on the damages question? Yes. Yes. And, Counsel, we'll give you 14 days. If you need more, let us know. All right. Counsel, you're excused a second time. Thank you. No, it counts.